UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DEMETRIUS WELLS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-1054** |
| **SHERIFF DANIEL EDWARDS, ET AL.** | **SECTION: "K"(1)** |

## REPORT AND RECOMMENDATION

Plaintiff, Demetrius Wells, a state inmate, filed this *pro se* complaint pursuant to 42 U.S.C. § 1983 against Sheriff Daniel Edwards, Major Randy Pinion, Lallie Kemp Hospital, Dr. Authur Mauterer, and Dr. Ronald Goldsby.

A Spears hearing was held on April 18, 2006, to allow plaintiff a meaningful opportunity to advise the Court of the nature and factual basis of his claims. See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).[1] At that hearing, plaintiff was sworn and his testimony was recorded. Based on his complaint and Spears hearing testimony, the Court finds that plaintiff is making the following allegations in support of his claims.

---

[1] "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed.R.Civ.P. 12(e) motion for more definite statement. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996). Spears hearing testimony becomes a part of the total filing by the *pro se* applicant. Id.

Plaintiff states that he was attacked by another inmate on June 5, 2005, resulting in several injuries including an injured thumb, a "crooked" nose, and a "big gash" on the side of his eye. Because the prison medical department was not open,[2] plaintiff was taken to the hospital for treatment. Plaintiff claims that he had to wait thirty or forty-five minutes before transportation arrived to take him to Lallie Kemp Hospital, during which time he was not given anything for the pain or to stop the bleeding.

At Lallie Kemp Hospital, plaintiff's hand was x-rayed and "skin glue" was applied to the laceration on his face. The emergency room physician informed plaintiff that his hand, thumb, and nose were not broken. He was then sent back to the jail.

A couple of days later, plaintiff went to see Dr. Ronald Goldsby, one of the doctors at the jail. Dr. Goldsby examined plaintiff's thumb and stated that "it's pretty bad" and that it would take "about six months" to heal. Plaintiff wanted a splint for his thumb, but none was provided.

A short time thereafter, plaintiff went to see Dr. Goldsby a second time because the facial laceration reopened. Dr. Goldsby refused to reglue the laceration, saying that it would heal.

Because of continuing pain in his hand, plaintiff returned to the jail medical department a third time, that time seeing Dr. Authur Mauterer, who ordered a copy of the hospital x-ray. After receiving and reviewing that x-ray, Dr. Mauterer agreed with the emergency room physician's assessment that the thumb was not broken.

After plaintiff's thumb subsequently worsened to the point where he could no longer move it, he went back to see Dr. Mauterer. At that point, Dr. Mauterer diagnosed plaintiff's injury as a

---

[2] Plaintiff testified that the prison medical department is closed after 2:30 p.m. in the afternoon and on weekends.

torn tendon. Plaintiff requested surgery to repair the tendon; however, Dr. Mauterer refused, saying that immediate surgery was ill-advised and that it would be better delayed for a couple of years until plaintiff was released from incarceration.

Dissatisfied with Dr. Mauterer's opinion, plaintiff went to see Major Randy Pinion. Pinion ordered that plaintiff be sent to an orthopedic physician. Pinion also allegedly told plaintiff's family that the jail would be responsible for his surgery.

Pursuant to Pinion's order, plaintiff was sent to the orthopedic clinic at the Medical Center of Louisiana at New Orleans ("Charity Hospital") on August 16, 2005. A second x-ray was taken of plaintiff's hand, and the Charity Hospital physician said that plaintiff's thumb was broken and had been broken for approximately nine weeks. The doctor further stated that the thumb should have been "wired" in place immediately after the break; however, because the injury had already started to heal, nothing could be done at that point. The doctor also stated that surgery should have been performed immediately after the injury to repair the torn tendon, but that now plaintiff would need reconstructive surgery to regain full use of his hand.

When plaintiff returned to the jail, he told Pinion what the doctor had said. Pinion replied: "What the fuck you want me to do about it? I ain't no fucking doctor. Go on back to your dorm."

Plaintiff then returned to the jail medical department to see Dr. Mauterer. When plaintiff told him that the Charity Hospital physician said the thumb was broken, Dr. Mauterer said that the physician was wrong.

Plaintiff also complains that he was teased by Deputy Toomer about getting "whipped" by the other inmate, which caused plaintiff to be depressed.

Plaintiff complains that there was inadequate security at the jail, which caused a delayed response time to break up the fight in which he was injured.

Lastly, plaintiff complains that he was forced to breathe secondhand smoke at the jail.

This Court is statutorily mandated to "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).[3] The fact that plaintiff has paid the filing fee does not exempt him from 28 U.S.C. § 1915A. The United States Fifth Circuit Court of Appeals has expressly held that the screening provisions of § 1915A apply "even when a prisoner has paid the required filing fee." Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998).

The Court has broad discretion in determining the frivolous nature of the complaint. Cay v. Estelle, 789 F.2d 318, 325 (5th Cir. 1986), modified on other grounds, Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993). In making that determination, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil

---

[3] "[T]he term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994). Thus, a complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994); Booker, 2 F.3d at 115 & n.6. Broadly reading plaintiff's complaint and fully considering his Spears hearing testimony,[4] the Court finds that several of plaintiff's claims lack any arguable basis in law and should be dismissed as frivolous and for otherwise failing to state a claim on which relief may be granted.

Delay in Medical Treatment

Plaintiff complains that because the Tangipahoa Parish Jail's medical department is only staffed part-time and was not open when he was attacked on June 5, 2005, he had to wait thirty or forty-five minutes for transportation to take him to Lallie Kemp Hospital for his emergency care. He complains that, during that brief delay, he was not given anything for the pain or to stop the bleeding.

The United States Fifth Circuit Court of Appeals has plainly stated that "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). In the instant case, plaintiff cannot show either substantial harm[5] or deliberate indifference.[6] Moreover,

---

[4] The court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

[5] There simply is no allegation that plaintiff suffered "substantial harm" due to the delay. Although he says that he was given nothing to stop the bleeding, there is no allegation that he lost a significant amount of blood or that he suffered any adverse medical consequence in any way related to the blood loss. Moreover, the brief period of pain he experienced without medication while waiting for transportation to arrive can in no way be considered "substantial harm." See

"[t]he federal courts have long recognized that de minimis delays in receiving medical care do not rise to the level of a constitutional violation." Thornton v. Layrisson, Civil Action No. 95-2885, 1997 WL 61452, at *4 (E.D. La. Feb. 7, 1997). A delay of less than an hour in the case of an injury that is not life-threatening is clearly de minimis. Wilson v. Lee, No. 01-C-5773, 2001 WL 1135900, at *4 (N.D. Ill. Sept. 24, 2001). Accordingly, the Court finds that plaintiff's claim that his constitutional rights were violated by the brief delay in medical care as he waited for transportation to the hospital is frivolous.

---

Vester v. Price, No.2:01-CV-0017, 2003 WL 22964273 (N.D. Tex. Sept. 30, 2003) (claim for thirteen-to-sixteen hour delay in receiving pain medication found to be frivolous), appeal dismissed, 111 Fed. App'x 326 (5th Cir. 2004).

[6] The United States Fifth Circuit Court of Appeals has held:

> Deliberate indifference is an extremely high standard to meet. ... [T]he plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks and citations omitted).
    In the instant case, plaintiff was not denied emergency medical care for his injuries after the attack. Rather, he admits that he was transported to the hospital for emergency care in less than one hour's time. That relatively quick transfer to the hospital shows that jail officials were in fact quite responsive to his need for medical attention and conclusively disproves that they were deliberately indifferent to that need.

Verbal Abuse

Plaintiff complains that he was teased by Deputy Toomer about getting "whipped" by the other inmate, which caused plaintiff to be depressed.[7]  Such a claim is not cognizable in a federal civil rights action.  See Calhoun v. Hargrove, 312 F.3d 730, 734 (5th Cir. 2002) ("[C]laims of verbal abuse are not actionable under § 1983 ...."); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997) ("It is clear that verbal abuse by a prison guard does not give rise to a cause of action under § 1983."); Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993) ("Mere allegations of verbal abuse do not present actionable claims under § 1983.").

Poor Security

Plaintiff complains that there was inadequate security at the jail, which caused a delayed response time to break up the fight in which he was injured.

To the extent that plaintiff is arguing that jail officials were negligent in not providing better security, he states no cognizable claim.  See Eason v. Thaler, 73 F.3d 1322, 1329 n.3 (5th Cir. 1996) ("[N]egligence is not a theory for which liability may be imposed under section 1983."); see also Baker v. McCollan, 443 U.S. 137, 146 (1979) ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law."); Nesmith v. Taylor, 715 F.2d 194, 195 (5th Cir. 1983) ("It is fundamental to our federal jurisprudence that state law tort claims are not actionable under federal law; a plaintiff under section 1983 must show deprivation of a federal right.").

---

[7] Rec. Doc. 1, Complaint, attached memorandum, p. 7.  Toomer has not been named as a defendant.

Moreover, to the extent that plaintiff is asserting a constitutional claim, it would be a failure-to-protect claim. See, e.g., Cruz v. Owens, Civil Action No. 86-5325, 1986 WL 13478 (E.D. Pa. Nov. 26, 1986) (claim that inmate was attacked due to "poor security" analyzed as a failure-to-protect claim). However, any such claim would be frivolous for the following reasons.

"To prevail on a section 1983 failure to protect claim, the prisoner must demonstrate that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection." Jones v. Greninger, 188 F.3d 322, 326 (5th Cir. 1999) (internal quotation marks omitted). Regarding the deliberate indifference requirement, the United States Fifth Circuit Court of Appeals has held:

> An official is deliberately indifferent when he knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Johnson v. Johnson, 385 F.3d 503, 524 (5th Cir. 2004) (quotation marks omitted). "[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." Thompson v. Upshur County, Texas, 245 F.3d 447, 459 (5th Cir. 2001). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In the instant case, there is no allegation that there was an obvious, substantial risk to inmate safety in general of which prison officials were aware and to which they were deliberately indifferent. Moreover, there is no allegation that even plaintiff himself, much less prison officials, had advance warning of the particular attack on June 5, 2005. Accordingly, plaintiff's failure-to-

protect claim must fail. Prison officials cannot be said to have been deliberately indifferent in failing to protect against a potential harm of which they were unaware. Farmer v. Brennan, 511 U.S. 825, 844 (1994).

### Secondhand Smoke

In the memorandum attached to his complaint, plaintiff complains that there were no "smoke free" dorms at the Tangipahoa Parish Jail and, as a result, he was forced to breathe secondhand smoke. He says that he is worried that inhaling the secondhand smoke will cause him to have cancer in the future.[8]

In Helling v. McKinney, 509 U.S. 25 (1993), the United States Supreme Court held that a prisoner states a cause of action under the Eighth Amendment by alleging that prison officials have, with deliberate indifference, exposed him to levels of environmental tobacco smoke that pose an unreasonable risk of serious damage to his future health. Based on Helling, the United States Fifth Circuit Court of Appeals has held:

> The Supreme Court has applied a two-prong test to determine whether exposure to second-hand smoke violates a prisoner's Eighth Amendment right. First, a prisoner must prove objectively that he is being exposed to *unreasonably high levels* of ETS [Environmental Tobacco Smoke]. In assessing this first factor, the court must conduct an inquiry into the seriousness of the potential harm and into the likelihood that second-hand smoke will actually cause such harm. The court also has to determine whether society considers the risk ... to be so grave that it violates contemporary standards of decency to expose *anyone* unwilling to such a risk. Second, the prisoner must show that prison authorities demonstrated a deliberate indifference to his plight.

Richardson v. Spurlock, 260 F.3d 495, 498 (5th Cir. 2001) (citations omitted). However, the Fifth Circuit has subsequently made clear that vague and speculative conclusions that allowing other

---

[8] Rec. Doc. 1, Complaint, attached memorandum, p. 9.

inmates to smoke created an unhealthy environment are insufficient to state a claim for exposure to environmental tobacco smoke.  Harrison v. Smith, 83 Fed. App'x 630, 631 (5th Cir. 2003).

In the instant case, it is questionable at best whether plaintiff's allegations are sufficient to state a claim for unreasonable exposure to environmental tobacco smoke.  Nevertheless, even if he were found to have otherwise stated a claim, his claim still necessarily fails for the following reasons.

To the extent that plaintiff is seeking monetary damages, his claim is barred by 42 U.S.C. § 1997e(e), which provides:  "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  Plaintiff does not allege that he has suffered an actual physical injury or an actual increased risk of developing cancer due to his exposure to environmental tobacco smoke at the Tangipahoa Parish Jail.  Rather, he alleges only that he worries the exposure may cause him some future harm, and this Court declines to characterize such allegations as anything more than a claim for emotional and mental damages barred by § 1997e(e).  See Herman v. Holiday, 238 F.3d 660, 666 (5th Cir. 2001).

To the extent that plaintiff is seeking declaratory or injunctive relief, his claim is now moot because he has been transferred from the Tangipahoa Parish Jail.[9]  Id. at 665.

## Lallie Kemp Hospital

"Lallie Kemp Hospital," named by plaintiff as a defendant herein, is a state-operated general hospital in Independence, Louisiana, properly known as the Lallie Kemp Regional Medical Center.

---

[9] Plaintiff is currently incarcerated at the LaSalle Correctional Center.

La.Rev.Stat.Ann. § 40:2002.1. Because the hospital is operated by and is an alter ego of the State of Louisiana, it is entitled to sovereign immunity under the Eleventh Amendment to the United States Constitution. See Darlak v. Bobear, 814 F.2d 1055, 1059-60 (5th Cir. 1987); Thomason v. Medical Center of Louisiana, Civil Action No. 99-3734, 2001 WL 839030 (E.D. La. July 23, 2001); Brown v. Foti, Civil Action No. 94-1659, 1996 WL 271639, at *2 (E.D. La. May 21, 1996); Helire v. Foti, Civil Action No. 91-1364, 1991 WL 255379 (E.D. La. Nov. 19, 1991). Because sovereign immunity deprives the Court of jurisdiction, claims barred by sovereign immunity should be dismissed without prejudice. Warnock v. Pecos County, Texas, 88 F.3d 341, 343 (5th Cir. 1996).

### Sheriff Daniel Edwards and Major Randy Pinion

Plaintiff has also named two supervisory officials, i.e. Sheriff Daniel Edwards and Major Randy Pinion, as defendants herein. For the following reasons, the claims against those defendants should be dismissed.

A supervisory official cannot be held liable for the actions of his subordinates under any theory of vicarious liability in a civil rights action filed pursuant to 42 U.S.C. § 1983. Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987); see also Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or *respondeat superior* liability."). "Personal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). Moreover, the United States Fifth Circuit Court of Appeals has held: "Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions:

The plaintiff must allege specific facts giving rise to the constitutional claims." Oliver, 276 F.3d at 741 (citation omitted).[10]

In the instant case, plaintiff has not alleged any specific conduct on the part of Edwards that violated plaintiff's constitutional rights. Clearly, therefore, he has stated no claim against Edwards.

With respect to Pinion, the allegations against him also fail to state a cognizable claim. To the extent that plaintiff alleges that Pinion agreed to be responsible for the tendon surgery and then

---

[10] The Court acknowledges that a supervisor may, in extremely limited circumstances, be held responsible based on his own failure to properly supervise or train his subordinates. However, with respect to such a claim, a plaintiff must be able to show:

> (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.

Estate of Davis *ex rel.* McCally v. City of North Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005). Regarding the "deliberate indifference" requirement for such a claim, the Fifth Circuit has observed:

> "Deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Deliberate indifference requires a showing of more than negligence or even gross negligence. Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity. To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation.

Id. (footnotes, quotation marks, and brackets deleted).
In this lawsuit, plaintiff has alleged only in a vague, conclusory fashion that the supervisory defendants should be held responsible for their subordinates' actions. To construe such generalized assertions as a separate failure-to-supervise claim, rather than as a *respondeat superior* claim, would effectively eviscerate the prohibition against the latter.

reneged on that promise, such a broken promise, even if it occurred, neither amounts to nor is evidence of a constitutional violation. To the extent that plaintiff is complaining that he was cursed by Pinion after returning from Charity Hospital[11] and that he failed to stop Deputy Toomer's taunts, verbal abuse, as noted previously in this opinion, simply is not actionable under § 1983. Plaintiff has made no other allegations against Pinion.

### Remaining Claims

Plaintiff also asserts claims against Dr. Authur Mauterer and Dr. Ronald Goldsby for inadequate medical care. Although expressing no opinion as to whether those claims might ultimately prove meritorious, the Court cannot say at this point that the claims are legally frivolous. Accordingly, the Court recommends that those claims be allowed to proceed for the time being.

### **RECOMMENDATION**

It is therefore **RECOMMENDED** that plaintiff's claims against Dr. Authur Mauterer and Dr. Ronald Goldsby for deliberate indifference to serious medical needs be allowed to proceed at this point. However, it is **FURTHER RECOMMENDED** that plaintiff's claims against the Lallie Kemp Hospital be **DISMISSED WITHOUT PREJUDICE** as barred by sovereign immunity. It is **FURTHER RECOMMENDED** that all of plaintiff's remaining claims against all other defendants be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted pursuant to 28 U.S.C. § 1915A(b)(1).

---

[11] Plaintiff does not allege that Pinion made any attempt to deny him access to medical care after that event and, in fact, admitted that he continued to go to the medical department.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this twenty-fifth day of April, 2006.

_____
**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**