**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DEMETRIUS WELLS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-1054** |
| **SHERIFF DANIEL EDWARDS, ET AL.** | **SECTION: "K"(1)** |

## ORDER AND REASONS

Plaintiff, Demetrius Wells, a state inmate, filed this *pro se* complaint pursuant to 42 U.S.C. § 1983 against Sheriff Daniel Edwards, Major Randy Pinion, the Lallie Kemp Regional Medical Center, Dr. Arthur Mauterer, and Dr. Reginald Goldsby. All of plaintiff's claims have been dismissed except for his claims against Drs. Mauterer and Goldsby for deliberate indifference to plaintiff's serious medical needs.[1] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge.[2]

Dr. Mauterer has filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56.[3] Plaintiff has opposed that motion.[4] In reviewing a motion for summary judgment, the Court may

---

[1] Rec. Doc. 11.

[2] Rec. Doc. 59.

[3] Rec. Doc. 60.

[4] Rec. Docs. 68 and 69.

grant judgment when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not clear from plaintiff's complaint whether he is asserting an official-capacity claim against Dr. Mauterer. However, Dr. Mauterer argues that any such claim against him would be barred by the Eleventh Amendment. On that point, he is partially correct.

Dr. Mauterer notes that from July 1, 2004, through June 30, 2005, he was under contract with the Lallie Kemp Regional Medical Center, a state hospital, to provide general medical services to prisoners at the Tangipahoa Parish Prison.[5] Under Louisiana law, any judgment against Dr. Mauterer arising from his performance under that contract would be satisfied out of the state treasury. La.Rev.Stat.Ann. § 13:5108.1(E)(2). Therefore, any official-capacity claim against Dr.

---

[5] Rec. Doc. 60, Exhibit F.

Mauterer is in reality a claim against the state itself, and, therefore, is barred by the Eleventh Amendment. Voisin's Oyster House, Inc. v. Guidry, 799 F.2d 183, 188 (5th Cir. 1986); see also Wallace v. Texas Tech Univ., 80 F.3d 1042, 1047 n.3 (5th Cir. 1996) ("Suits against state officials in their official capacity are considered to be suits against the individual office, and so are generally barred as suits against the state itself."). The United States Fifth Circuit Court of Appeals has noted:

> The Eleventh Amendment bars a state's citizens from filing suit against the state or its agencies in federal courts. ... [T]he Eleventh Amendment bars suits for both money damages and injunctive relief unless the state has waived its immunity. By statute, Louisiana has refused any ... waiver of its Eleventh Amendment sovereign immunity regarding suits in federal court. See La.Rev.Stat.Ann. § 13:5106(A).
>
> Furthermore, Congress may only abrogate a state's Eleventh Amendment immunity by unequivocally expressing its intent to do so and by acting pursuant to a valid exercise of power. We note that in enacting § 1983, Congress did not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States.

Cozzo v. Tangipahoa Parish Council-President Government, 279 F.3d 273, 280-81 (5th Cir. 2002) (quotation marks and citations omitted).

However, it appears that Dr. Mauterer's contract with the state expired on June 30, 2005, and, although he remained the Tangipahoa Parish Prison's staff physician thereafter, it is unclear by whom he was employed after that date. If he was no longer an employee or independent contractor of the state after June 30, the Eleventh Amendment obviously would not protect him against claims based on his actions or inactions after that date. Nevertheless, even if he were employed directly by a local governmental body as of July 1, 2005, any official-capacity claim arising on or after that date fails for an alternative reason.

Again, "[o]fficial capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999). Accordingly, if Dr. Mauterer performed his services as an employee or contractor of a local governmental body as of July 1, an official-capacity claim arising on or after that date would in reality be a claim against that governmental body. However, in order to hold a local governmental body accountable for a constitutional violation, a plaintiff must allege that (1) an agent of the local governmental body violated plaintiff's clearly established constitutional rights with subjective deliberate indifference, and (2) the violation resulted from a policy or custom adopted or maintained by the local governmental body with objective deliberate indifference. See Olabisiomotosho v. City of Houston, 185 F.3d 521, 528-29 (5th Cir. 1999). The second prong clearly is not met here, in that plaintiff does not allege that the purported constitutional violations in this case resulted from an official policy or custom.[6] Therefore, even if Dr. Mauterer would no longer enjoy the protections of the Eleventh Amendment for claims arising on or after July 1, 2005, the official-capacity claim still fails.[7]

As to any claims against him in individual capacity, Dr. Mauterer argues that he is entitled to qualified immunity. This Court agrees.

---

[6] The Court further notes that, with respect to the first prong, a serious question exists as to whether any agent of the local governmental body acted with subjective deliberate indifference. For the reasons discussed later in this opinion, it is clear that at least Dr. Mauterer did not.

[7] Although Dr. Mauterer does not make this argument in his motion, the Court may, and does hereby, raise it *sua sponte* under its statutory authority to dismiss such claims as frivolous and for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b).

In Gobert v. Caldwell, 463 F.3d 339 (5th Cir. 2006), the United States Fifth Circuit Court of Appeals exhaustively examined the qualified immunity doctrine as applied to medical claims asserted by prisoners against prison doctors. As a preliminary matter, the Court of Appeals explained:

> Qualified immunity provides government officials performing discretionary functions with a shield against civil damages liability, so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. In determining whether an official enjoys immunity, we ask (1) whether the plaintiff has demonstrated a violation of a clearly established federal constitutional or statutory right and (2) whether the official's actions violated that right to the extent that an objectively reasonable person would have known.

Id. at 345 (footnotes omitted). The Court then went on to note that, in the case before it, it was undisputed that the prisoner's claims implicated a clearly established constitutional right, i.e. the Eighth Amendment right of a prisoner not to have his serious medical needs met with deliberate indifference. Id. However, the Court ultimately found in favor of the doctor on the ground that the prisoner failed overcome the first prong of the qualified immunity analysis because he failed to show a *violation* of that constitutional right.

Regarding such medical claims, the Court of Appeals noted:

> Finding a violation of the Eighth Amendment's prohibition against cruel and unusual punishment also requires a twofold analysis. [The prisoner] must first prove objective exposure to a substantial risk of serious harm. Additionally, he must show that prison officials acted or failed to act with deliberate indifference to that risk.

Id. at 345-46 (footnotes omitted). With respect to the subjective prong of that inquiry, the Court of Appeals further noted:

> A prison official acts with deliberate indifference only if (A) he knows that inmates face a substantial risk of bodily harm and (B) he disregards that risk by failing to take reasonable measures to abate it. Unsuccessful medical treatment, acts of negligence,

> or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Deliberate indifference is an extremely high standard to meet.

Id. at 346 (footnotes, brackets, and quotation marks omitted).

The Court of Appeals then explained that, in the context of the summary judgment motion, "[i]t is [the prisoner] who must demonstrate disputed facts relevant to the determination of [the doctor's] alleged deliberative indifference, which when resolved in [the prisoner's] favor defeat immunity." Id. at 348. Therefore, the prisoner must demonstrate that there such disputed facts as to the applicable *mens rea* of deliberate indifference, i.e. "subjective knowledge of a substantial health risk," or as to whether the doctor in fact "disregarded a substantial health risk about which he knew." Id. at 348-49. Concerning that latter issue, the Court took care to note that "deliberate indifference exists wholly independent of an optimal standard of care"; rather, the applicable issue is whether genuine disputed issues of fact exist with respect to whether the doctor "purposefully neglected [the prisoner's] medical needs." Id.

After reviewing the evidence in Gobert, the Court of Appeals held that the prisoner's claim failed on the first prong of the qualified immunity analysis because, based on the summary judgment evidence, it was clear that petitioner could not establish that the doctor acted with deliberate indifference. For the following reasons, this Court finds that the same is true in the instant case.[8]

---

[8] Because Gobert involved a claim asserted by a convicted prisoner, the claim was analyzed under the Eighth Amendment. However, the standard for inadequate medical care is essentially the

Although certain facts in this case are disputed, the material facts are not. On June 5, 2005, an inmate at the Tangipahoa Parish Prison attacked plaintiff, who sustained injuries to his right hand and face. Because the jail medical department was closed and Dr. Mauterer, the prison doctor, was on vacation in England, plaintiff was taken to the Lallie Kemp Regional Medical Center ("LKRMC") where his hand was x-rayed. The radiologist's report states that "no fractures or joint abnormalities" were found,[9] and plaintiff was returned to the prison. After Dr. Mauterer returned from vacation, he first examined plaintiff's injuries on June 28, 2005, the day after plaintiff noticed that he could no longer move his thumb. Based on plaintiff's complaints, Dr. Mauterer ordered the radiology report on the x-ray taken at the LKRMC on June 5; however, as noted, that report indicated that no abnormalities were found. When plaintiff continued to complain of pain, Dr. Mauterer had his staff schedule an appointment for plaintiff at the orthopedic clinic at the Medical Center of Louisiana in New Orleans ("MCLNO") for further diagnostic testing.[10] An appointment was secured for August 16, 2005, at which time plaintiff's hand was again x-rayed. The radiologist who read that x-ray determined that plaintiff had a "minimally displaced fracture" at the base of his thumb. However, no corrective surgery was scheduled by the MCLNO doctor; rather, plaintiff

same regardless of whether an inmate is a convicted prisoner or a pretrial detainee, whose claims must be asserted under the Fourteenth Amendment. Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1996) (there is "no constitutionally significant distinction between the rights of pretrial detainees and convicted inmates to basic human needs, including medical care"). Therefore, although it is unclear from the record exactly when plaintiff was convicted, the analysis is the same even if some portion of the events discussed herein occurred while he was still a pretrial detainee.

[9] Rec. Doc. 60, Exhibit B.

[10] The choice was made to send plaintiff to MCLNO because there was no orthopedic surgeon on staff at LKRMC from June through August, 2005. Rec. Doc. 60, Exhibit G, ¶ 21.

candidly admits in his complaint that the MCLNO doctor stated that "he couldn't do anything for my broken thumb" and that plaintiff would eventually need reconstructive surgery to regain full use of his thumb.[11] Plaintiff was transferred from the Tangipahoa Parish Prison on November 18, 2005.[12]

Based on the foregoing, the Court finds that plaintiff simply cannot prevail on either prong of the deliberate indifference inquiry.

The first prong of that inquiry requires that plaintiff show that Dr. Mauterer had knowledge of a substantial health risk to plaintiff. Here, however, the evidence is to the contrary. The parties agree that Dr. Mauterer's first involvement with plaintiff's injury was the examination which took place on June 29, 2005. At that meeting, Dr. Mauterer did not ignore plaintiff's complaints; rather, he ordered the radiology report on the x-ray taken at LKRMC. That radiology report, a copy of which is contained in the record, clearly states that the x-ray revealed "no fractures or joint abnormalities."[13] Dr. Joe Almond Morgan, a board certified orthopedic surgeon who has reviewed the records in this case, opines:

> Since Dr. Mauterer is not an orthopedic surgeon and is not a radiologist, he relied on the radiologist for his diagnosis of a fracture or any other bone or joint abnormality is present. Since inmate Wells had been referred to and treated by the radiology clinic at Lallie Kemp Regional Medical Center, I see no reason for Dr.

---

[11] Rec. Doc. 1, pp. 10-11.

[12] Rec. Doc. 60, Exhibit J.

[13] Rec. Doc. 60, Exhibit B.

Mauterer to question the diagnosis the radiologist made of the plaintiff's right thumb on June 5, 2005.[14]

Based on the facts that Dr. Mauterer checked plaintiff's medical records from LKRMC and that those records clearly indicate that there were no abnormalities, there is simply no evidence that Dr. Mauterer had knowledge of a substantial health risk to plaintiff.

Nevertheless, even if that were not true, plaintiff's claim would still falter at the second prong of the deliberate indifference inquiry. That prong requires that plaintiff show that Dr. Mauterer disregarded a known substantial health risk by failing to take reasonable measures to abate it. In his unrebutted affidavit, Dr. Morgan noted that it was his "opinion that there is no examination Dr. Mauterer could have done for inmate Wells' complaints concerning his right thumb that would have helped him in any way."[15] Dr. Mauterer is not a surgeon, and, therefore, he could not perform the surgery plaintiff contends was needed. Further, Dr. Mauterer could not order another physician to perform such surgery. What Dr. Mauterer could do, and what he in fact did, was send plaintiff for further evaluation at MCLNO. However, as noted, even plaintiff concedes that the MCLNO doctor said that there was nothing he could do at that point, and there is no evidence that he recommended or scheduled immediate reconstructive surgery.

The Court is aware that plaintiff is of the opinion that Dr. Mauterer should have been more proactive and that earlier, more aggressive intervention might have lessened or eliminated the lasting damage done when the injury went untreated. However, even if that is true, it is not relevant. The

[14] Rec. Doc. 60, Exhibit H, ¶ 26.

[15] Rec. Doc. 60, Exhibit H, ¶ 27.

fact that a prisoner's medical treatment "may not have been the best money could buy" is insufficient to establish a constitutional violation. Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); see also McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978) (the applicable legal standard is not whether an inmate was provided the "optimum" or "best" medical care available). Further, even if plaintiff believes that Dr. Mauterer was negligent or committed malpractice, allegations of negligence or malpractice or negligence alone are never sufficient to state a claim for constitutionally inadequate medical care. Hall v. Thomas, 190 F.3d 693, 697 (5th Cir. 1999). Rather, as noted, the applicable test is whether Dr. Mauterer was *deliberately indifferent* to plaintiff's serious medical needs. For the reasons previously stated, it is clear that he was not.[16]

Because there was no constitutional violation in this case, plaintiff cannot overcome the first prong of the qualified immunity analysis.[17] Therefore, as to any claim against Dr. Mauterer in his individual capacity, the Court finds that no genuine issue of material fact exists with respect to his entitlement to qualified immunity.

Accordingly, for all of the foregoing reasons,

**IT IS ORDERED** that the motion for summary judgment filed by Dr. Arthur Mauterer, Rec. Doc. 60, is **GRANTED** and the claims against him are **DISMISSED WITH PREJUDICE**.

---

[16] The Court notes that plaintiff argues that the state, on behalf of Dr. Mauterer, conceded liability in this case by offering to provide plaintiff with reconstructive surgery to settle the case. However, that never occurred. During a telephone conference, the Court inquired whether plaintiff would be interested in settling the case in exchange for such surgery. When plaintiff stated that he was unwilling to settle the case without monetary compensation, the matter was dropped. No actual offer from the state was ever made.

[17] Because the record cannot support a finding of deliberate indifference, the Court need not address the second prong of the qualified immunity analysis. Gobert, 463 F.3d at 352 n.44.

New Orleans, Louisiana, this twenty-third day of August, 2007.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**