## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DEMETRIUS WELLS**                                      **CIVIL ACTION**

**VERSUS**                                               **NO. 06-1054**

**SHERIFF DANIEL EDWARDS, ET AL.**                       **SECTION:  "K"(1)**

## ORDER AND REASONS

Plaintiff, Demetrius Wells, a state inmate, filed this *pro se* complaint pursuant to 42 U.S.C.

§ 1983 against Sheriff Daniel Edwards, Major Randy Pinion, the Lallie Kemp Regional Medical

Center, Dr. Arthur Mauterer, and Dr. Reginald Goldsby.  All of the claims herein have been

dismissed except for the claim against Dr. Goldsby for deliberate indifference to plaintiff's serious

medical needs.[1]  The parties have consented to the jurisdiction of the undersigned United States

Magistrate Judge.[2]

Dr. Goldsby has now filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56,[3]

which plaintiff has opposed.[4]  In reviewing a motion for summary judgment, the Court may grant

---

[1] Rec. Docs. 11 and 75.

[2] Rec. Doc. 59.

[3] Rec. Doc. 78.

[4] Rec. Doc. 88.

judgment when no genuine issue of material fact exists and the mover is entitled to judgment as a

matter of law.  Fed.R.Civ.P. 56(c).  "Procedurally, the party moving for summary judgment bears

the initial burden of informing the district court of the basis for its motion, and identifying those

portions of the record which it believes demonstrate the absence of a genuine issue of material fact."

Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation

marks and brackets omitted).  The party opposing summary judgment must then "go beyond the

pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and

admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"

Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (quoting Fed.R.Civ.P. 56); see also Provident

Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001).  There is no "genuine issue"

when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant.

Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Plaintiff brought this action pursuant to 42 U.S.C. § 1983, which provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom,
> or usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress ....

Accordingly, "[a] claim for relief under 42 U.S.C. § 1983 must contain two elements: 1) that [the

plaintiff has] been deprived of a right secured by the Constitution or laws of the United States; and

2) that the defendant acted under color of state law."  Wong v. Stripling, 881 F.2d 200, 202 (5th Cir.

1989).  Defendant argues that he cannot be held liable under § 1983 because he was not acting under

color of state law when he provided medical care to plaintiff at the Tangipahoa Parish Jail.

2

It is clear from the record that, at all times relevant to this lawsuit, it was Dr. Arthur Mauterer, not Dr. Goldsby, who was employed to provide medical services to inmates at the Tangipahoa Parish Prison. The record reflects that from July 1, 2004, through June 30, 2005, Dr. Mauterer was under contract with the Lallie Kemp Regional Medical Center, a state hospital, to provide such services.  However, in June 2005, Dr. Goldsby "filled in" at the prison when Dr. Mauterer went on vacation to Europe.[5]  The question here is whether that arrangement served as an adequate basis for finding Dr. Goldsby to be a state actor for the purposes of this lawsuit.

It is beyond cavil that a physician *employed* to provide in-house medical care to a prison's inmates is considered a state actor.  West v. Atkins, 487 U.S. 42 (1988).  However, there is no evidence in the instant case that Dr. Goldsby was employed by the state, the local governmental entity, or by Dr. Mauterer to provide medical services to the inmates, including plaintiff. Nevertheless, it is clear that, regardless of how he came to provide those services, Dr. Goldsby was in fact fulfilling a constitutional obligation on behalf of the governmental authorities by acting as the prison doctor.  As the Supreme Court noted in West:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.  In light of this, the Court held that the State has a constitutional obligation, under the Eighth Amendment, to provide adequate medical care to those whom it has incarcerated.

Id. at 54 (citations and quotation marks omitted).  Moreover, prison authorities controlled plaintiff's access to medical care, and such care could be provided only by those whom they authorized.  In the instant case, it is obvious that prison authorities, either expressly or tacitly, authorized Dr.

---

[5] Rec. Doc. 78, Exhibit C.  The record does not reflect whether Dr. Goldsby was compensated for those services or was merely performing a favor for a colleague.

Goldsby to serve temporarily as the prison's physician in Dr. Mauterer's absence.  Therefore, the prison authorities clothed Dr. Goldsby with the "authority of state law" and he was a state actor for the purposes of this litigation.  See id. at 55.  If Dr. Goldsby misused that authority by demonstrating deliberate indifference to plaintiff's serious medical needs, then "the resultant deprivation was caused, in the sense relevant for state-action inquiry, by the State's exercise of its right to punish [the inmate] by incarceration and to deny him a venue independent of the State to obtain needed medical care."  Id. at 55.  Accordingly, plaintiff should be allowed to utilize § 1983 to obtain compensation for any injuries resulting from such a deprivation of his constitutional rights.

However, as Dr. Goldsby correctly notes in his motion, if he is considered a state actor, then he is entitled to the same defenses available to other state actors, including the defense of qualified immunity.  In Gobert v. Caldwell, 463 F.3d 339 (5th Cir. 2006), the United States Fifth Circuit Court of Appeals exhaustively examined the qualified immunity doctrine as applied to medical claims asserted by prisoners against prison doctors.  As a preliminary matter, the Court of Appeals explained:

> Qualified immunity provides government officials performing discretionary functions with a shield against civil damages liability, so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.  In determining whether an official enjoys immunity, we ask (1) whether the plaintiff has demonstrated a violation of a clearly established federal constitutional or statutory right and (2) whether the official's actions violated that right to the extent that an objectively reasonable person would have known.

Id. at 345 (footnotes omitted).  The Court then went on to note that, in the case before it, it was undisputed that the plaintiff's claims implicated a clearly established constitutional right, i.e. the right of a prisoner not to have his serious medical needs met with deliberate indifference.  Id.

4

However, the Court ultimately found in favor of the doctor on the ground that the prisoner had not overcome the first prong of the qualified immunity analysis by establishing a *violation* of that constitutional right.  Specifically, the Court found that, based on the summary judgment evidence, it could not be shown that the doctor acted with deliberate indifference, as is required to establish a violation of a prisoner's constitutional right to adequate medical care.  For the following reasons, this Court finds that the same is true in the instant case.

Regarding constitutional claims concerning medical care, the Court of Appeals noted that a prisoner must show, *inter alia*, that the defendant acted, or failed to act, with deliberate indifference to a substantial risk of serious harm.  Id. at 345-46 (footnotes omitted).[6]  The Court further noted that a defendant "acts with deliberate indifference only if (A) he knows that inmates face a substantial risk of serious bodily harm and (B) he disregards that risk by failing to take reasonable measures to abate it.  Id. at 346 (internal quotation marks and brackets omitted).  The Court then explained that, in the context of the summary judgment motion, a prisoner must demonstrate that there are disputed factual issues as to whether the doctor acted with the applicable *mens rea* for deliberate indifference, i.e. "subjective knowledge of a substantial health risk," or as to whether he in fact "disregarded a substantial health risk about which he knew."  Id. at 348-49.

---

[6] Because Gobert involved a claim asserted by a convicted prisoner, the claim was analyzed under the Eighth Amendment.  However, the standard for inadequate medical care is essentially the same regardless of whether an inmate is a convicted prisoner or a pretrial detainee, whose claims must be asserted under the Fourteenth Amendment.  Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1996) (there is "no constitutionally significant distinction between the rights of pretrial detainees and convicted inmates to basic human needs, including medical care").  Therefore, although it is unclear from the record exactly when plaintiff was convicted, the analysis is the same even if some portion of the events discussed herein occurred while he was still a pretrial detainee.

Concerning that latter issue, the Court noted that the test is whether there are genuine disputed issues of fact as to whether the doctor "*purposefully* neglected [the prisoner's] medical needs." Id. at 349 (emphasis added).

In the instant case, the essential facts are simple and undisputed. On June 5, 2005, an inmate at the Tangipahoa Parish Prison attacked plaintiff, who sustained injuries to his right hand and face. Because Dr. Mauterer was on vacation and the jail medical department was closed, plaintiff was taken to the Lallie Kemp Regional Medical Center. At the hospital, a laceration on his forehead was closed with Dermabond, a temporary adhesive that wears away after a number of days.[7] Additionally, his hand was x-rayed, and the radiologist's report stated that "no fractures or joint abnormalities" were found.[8]

The instant claim against Dr. Goldsby is similarly straightforward and involves only plaintiff's care during the period after he returned from the hospital and before Dr. Mauterer returned from vacation in late June 2005. With respect to that claim, plaintiff alleges in his complaint:

> After being seen by the Lalie Kemp Physician, a few days later, the medical skin glue came off my laceration, too soon. I put in a Medical Request to see the facility Doctor. I was seen by Doctor Ronald [sic] Goldsby and his nurse. Him and the nurse were substituting for the permanent Doctor and nurse.
> My complaints were:
>
> (1) I told him that the glue had came off my laceration, that was put on me at Lalie Kemp Hospital and I asked him if he would reglue it, because the wound wasn't closed together. It was still deep and

---

[7] Rec. Doc. 78, Exhibits C and D.

[8] Rec. Doc. 78, Exhibit D.

widely open.  He didn't even try and treat my laceration at all.  He even refused to put more glue on my laceration, too.

Comments:  I believe I wouldn't have such a bad scar on me, if the doctor had reglued or retreated my laceration.

(2) I also told Doctor Goldsby that my thumb was in severe pain and that I could barely move it.  So Dr. Golden [sic] looked at it, he saw the bone sticking up.  He examined my thumb and told me, that my thumb was injured very bad.  He also said it would probably take 6 months to heal.  He said, try not to move it or use it, too much.  I asked him could he give me something to stablize it and didn't it look broken.  He said, no!  I saw Dr. Golden [sic] on 2 separate visits about my thumb.  All I received was IBU pain pills!  He never ordered my X-rays to see the damage that was done to my thumb.

Comments:  If Doctor Goldsby had done a better exam on my thumb and looked at the X-rays, he probably would have seen that my thumb was Broken and the tendon was severely damaged.[9]

For the following reasons, the Court finds that plaintiff simply cannot show, as is required under the first prong of the deliberate indifference inquiry, that Dr. Goldsby had knowledge of a substantial health risk to plaintiff.

Regarding the laceration, plaintiff's wound had already been treated by the medical staff at the Lallie Kemp Regional Medical Center through the application of Dermabond, an inherently temporary adhesive.  When the adhesive wore off, plaintiff was of the opinion that an adhesive should be reapplied.  However, Dr. Goldsby examined the wound and reached a contrary conclusion.  There is no evidence whatsoever before the Court demonstrating that the failure to reapply an adhesive exposed plaintiff to a substantial health risk, much less that Dr. Goldsby was aware of such a risk.

---

[9] Rec. Doc. 1, statement of claims, p. 2 of 12.

Regarding the injury to plaintiff's thumb, medical professionals at the Lallie Kemp Regional Medical Center had *already* x-rayed the thumb and found *no* fractures or joint abnormalities. There is no evidence from which one could conclude that Dr. Goldsby had any knowledge that he was exposing plaintiff to a substantial health risk by failing to order another set of x-rays or having the existing set reexamined by a different radiologist.

Moreover, in any event, there is no evidence that Dr. Goldsby failed to take reasonable measures to abate a known risk. It is undisputed that he examined plaintiff's laceration and thumb. Based on that examination, Dr. Goldsby determined that no additional adhesive or x-rays were necessary. The fact that he and plaintiff disagreed on those issues is of no moment. It is clear that a disagreement between a prison doctor and an inmate concerning whether certain medical treatment is necessary or appropriate generally is not actionable absent exceptional circumstances. Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995). No such exceptional circumstances exist in this case. Further, Dr. Goldsby's decision was clearly one based on his professional judgment, and, as such, is not lightly second-guessed in a federal civil rights action. See Estelle v. Gamble, 429 U.S. 97, 107 (1976) ("[T]he question of whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment.").

Moreover, even if Dr. Goldsby's medical judgment was ultimately wrong and additional treatment and x-rays were necessary, a fact which has *not* been proven here, his failure to provide such care amounts to nothing more than negligence or medical malpractice. Such claims are ones for the state courts, not a federal court. See id. ("A medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and

as such the proper forum is the state court under [state tort law].")  It is clear that allegations of negligence or malpractice alone are never sufficient to state a federal claim for constitutionally inadequate medical care.  Hall v. Thomas, 190 F.3d 693, 697 (5th Cir. 1999).

It also is immaterial that Dr. Goldsby may not have provided plaintiff with the best medical care available.  The fact that a prisoner's medical treatment "may not have been the best money could buy" is simply insufficient to establish a constitutional violation.  Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); see also Gobert, 463 F.3d at 349 ("deliberate indifference exists wholly independent of an optimal standard of care"); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978) (the applicable legal standard is not whether an inmate was provided the "optimum" or "best" medical care available).  Rather, as noted, the applicable test is whether Dr. Goldsby was *deliberately indifferent* to plaintiff's serious medical needs.  For the reasons previously stated, it is clear that he was not.

Based on the foregoing, it is evident that there was no constitutional violation in this case, and so plaintiff cannot overcome the first prong of the qualified immunity analysis.[10]  Therefore, as to any claim against Dr. Goldsby in his individual capacity, the Court finds that no genuine issue of material fact exists with respect to his entitlement to qualified immunity.[11]

Accordingly, for all of the foregoing reasons,

---

[10]  Because the record cannot support a finding of deliberate indifference, the Court need not address the second prong of the qualified immunity analysis.  Gobert, 463 F.3d at 352 n.44.

[11]  Plaintiff has asserted no official-capacity claim against Dr. Goldsby.  Even if plaintiff had asserted such a claim, however, it would be subject to dismissal for the same reasons noted in this Court's order granting summary judgment to Dr. Mauterer.

**IT IS ORDERED** that the motion for summary judgment filed by Dr. Reginald Goldsby, Rec. Doc. 78, is **GRANTED** and the claims against him are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this eighteenth day of October, 2007.

_____

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**